**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Claflin,<br><br>        Plaintiff,<br><br>v.<br><br>Robert L. Wilkie,<br><br>        Defendant. | No. CV-19-04718-PHX-JJT<br><br>**ORDER** |

At issue is Defendant's Motion for Summary Judgment (Doc. 51, DMSJ), supported by Defendant's Statement of Facts (Doc. 52, DSOF), to which Plaintiff filed a Response (Doc. 60, Resp.) with an Additional Statement of Facts (Doc. 58, PSOF), and Defendant filed a Reply (Doc. 62, Reply). For the reasons that follow, the Court grants Defendant's Motion.

**I.     BACKGROUND**

Plaintiff, Nancy Claflin, is the former Associate Director of Patient Care Services and Nurse Executive of the Phoenix Veterans Affairs Medical Center ("Phoenix VA"). Plaintiff alleges that Defendant, Dennis McDonough[1], the Secretary of Department of Veterans Affairs, forced Plaintiff to retire. Because of her forced retirement, Plaintiff asserts three causes of action: (1) disparate treatment based on gender violation of Title

---

[1] To update the case's caption from the former Secretary of Veterans Affairs, Secretary Wilkie, to the current Secretary of Veterans Affairs, Secretary McDonough, Defendant must file a Notice of Substitution of Party with the Clerk of the Court.

VII; (2) hostile work environment; and (3) disparate treatment based on age in violation of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.

Five individuals lead the Phoenix VA: the Medical Center Director, the Associate Director, the Chief of Staff, the Associate Director of Patient Care/Executive Nurse, and the Assistant Director (collectively the individuals are referred to as the "PENTAD"). (DMSJ at 2.) In April 2014, whistleblowers came forward alleging the Phoenix VA used secret waitlists to conceal prolonged waits for appointments, and that as many as 40 veterans had died while waiting for primary care appointments. (DMSJ at 2.) At the time, the PENTAD was comprised of Sharon Helman (Medical Center Director), Lance Robinson (Associate Director), Darren Deering (Chief of Staff), Plaintiff (Associate Director of Patient Care/Nurse Executive), and John Scherpf (Assistant Director). On May 1, 2014, in the aftermath of the whistleblower allegations, Ms. Helman and Mr. Robinson were placed on administrative leave. (DMSJ at 2.) On May 8, 2014, the Secretary of Veterans Affairs, Eric Shinseki, ordered audits of all VA health-care facilities in the United States and on May 15, 2014, the first of multiple Congressional hearings was held. (DMSJ at 2.) Eventually both Robert Petzel, the Under Secretary for Health in the Department of Veterans Affairs, and Secretary Shinseki retired and resigned, respectively. (DMSJ at 2.) By the middle of June 2014, the VA's Office of Inspector General, the Federal Bureau of Investigations, and the White House had all begun investigations. (DMSJ at 2.)

Steve Young became the Acting Medical Center Director ("AMCD") after Ms. Helman was placed on administrative leave. While Mr. Young was the AMCD, the Joint Commission, a hospital accrediting organization, conducted an unannounced survey of the Phoenix VA. (DMSJ at 2.) Shortly thereafter, Mr. Glenn Costie became the AMCD, replacing Mr. Young. (DMSJ at 2.) Mr. Costie was verbally informed of the Joint Commission's findings while the surveyor was on sight and the subsequent written report detailed deficiencies in the nursing department. (DSOF at 40.)

In July 2014, the VA Office of Nursing Services ("ONS") sent Dr. Beth Taylor to assist Plaintiff. (DMSJ at 3.) Dr. Taylor notified Plaintiff that Mr. Costie, in light of the

surveyor's concerns, had requested an additional review of nursing services which would be conducted in early August. (DMSJ at 3.) That review, completed by Ms. Jones Monnett, the Nurse Executive from the Dayton VA, identified problems with Plaintiff's "tight control on recruitment and hiring processes." (DSOF at 39.) Ultimately, Mr. Costie concluded Plaintiff was "part of the problem." (Reply at 3.)

At some point Dr. Taylor discussed the risks Plaintiff faced if she stayed in her position. Mr. Costie had similar conversations with Plaintiff. (DMSJ at 3.) As an alternative, Dr. Taylor discussed the possibility of Plaintiff moving to a virtual position with ONS or retiring. (DMSJ at 3.) Eventually, in August of 2014, Plaintiff resigned from the Phoenix VA. On July 16, 2019, she filed the present lawsuit in the District of Arizona. Defendant now moves to dismiss the case on Summary Judgment.

## II.     LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative

evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

### A.   Plaintiff's Disparate Treatment Claim Based on Gender

In order to show disparate treatment under Title VII, Plaintiff must first establish a *prima facie* case of discrimination as the United States Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a disparate treatment claim a plaintiff must show (1) the plaintiff belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees were treated more favorably or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas,* 411 U.S. at 802).

"If the plaintiff establishes a *prima facie* case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action . . . . If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id*. (internal citations and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate pretext,

but such evidence must be both specific and substantial. *Id.* At the last step, if the plaintiff can show pretext, the only remaining issue is whether discrimination occurred or not. *Id.*

Plaintiff alleges she was performing her job satisfactorily and experienced disparate treatment because she was forced to retire while two other PENTAD members, who were male and younger, were not. (Resp at 6.) To support her claim Plaintiff cites her "forty years of service with the Phoenix VA and three consecutive years of "excellent" or "[o]utstanding" performance reviews as Nurse Executive. (Resp. at 10.) Defendant argues Plaintiff's claim fails because she was not performing her job satisfactorily. (DMSJ at 9.) Even if she was, Defendant argues that Plaintiff fails to produce specific and substantial evidence of disparate treatment. (DMSJ at 9.)

The Court agrees that Plaintiff fails to create a genuine issue of material fact as to whether she can show a *prima facie* case of discrimination. Undisputed evidence shows Plaintiff's job performance was unsatisfactory. Following its inspection, the Joint Commission report identified deficiencies that fell under Plaintiff's responsibility. Plaintiff states the Joint Commission report does "not explicitly cite [Ms.] Claflin or her performance as a matter for concern." (Resp. at 9.) However, under the Chapter titled "Nursing", the hospital received a score of "insufficient compliance" with the report stating, among other things, that "[t]he Nurse Executive h[ad] not ensured that there [wa]s appropriate staffing of CNAs [(Certified Nursing Assistants)] for this unit." (DSOF Ex. 14 DEF-VA-001297-98.) Additionally, Ms. Monnett, the Nurse Executive who was completing an additional review of Nursing Services, also expressed concerns. (Reply at 4.) Further, Dr. Taylor had independently identified concerns within the nursing department and communicated them to Mr. Costie. (DMSJ at 8.) Plaintiff, to support her argument that she was performing satisfactorily, relies on performance evaluations held prior to July 2014. Prior reviews do not establish that Plaintiff was meeting her employer's legitimate expectations in July 2014. The evidence thus shows that at the time Plaintiff experienced an adverse employment action, she was not performing her job satisfactorily. *See Nganje v. CVS RX Servs., Inc.*, 2015 WL 4173269, at *9 (D. Ariz. July 10, 2015)

(granting summary judgment dismissing disparate treatment claim because "[g]iven the discipline plaintiff received in 2010–2012 and the 'needs improvement' performance evaluation she received in 2012, no reasonable jury could conclude that she was performing her job satisfactorily"). Because Plaintiff cannot show she was performing her job satisfactorily, Summary Judgment in favor of Defendant is appropriate as to Plaintiff's disparate treatment claim based on Title VII.

### B. Plaintiff's ADEA Claim

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection applies to individuals who are at least 40 years old. 29 U.S.C. § 631(a). To state a claim of age discrimination, a plaintiff must allege sufficient facts to show she (1) belongs to a protected class; (2) was performing her job satisfactorily; (3) was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802).

Similar to the analysis above, Plaintiff fails to create a genuine issue of material fact as to whether she can show a *prima facie* case of an ADEA violation because she cannot establish she was performing her job satisfactorily. Accordingly, Summary Judgment in favor of Defendant is appropriate on Plaintiff's ADEA claim.

### C. Plaintiff's Hostile Work Environment Claim

To establish a *prima facie* case for a hostile work environment, Plaintiff must raise a triable issue of fact as to whether (1) Defendant subjected her to verbal or physical conduct of a harassing nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Clark v. City of Tucson*, 2018 WL 1942771, at *13 (D. Ariz.

1    Apr. 25, 2018). Whether the conduct was sufficiently severe or pervasive is determined by
2    the facts of the case in totality of the circumstances. "We must consider all the
3    circumstances, including 'the frequency of the discriminatory conduct; its severity;
4    whether it is physically threatening or humiliating, or a mere offensive utterance; and
5    whether it unreasonably interferes with an employee's work performance.'" *Davis v. Team*
6    *Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Harris v. Forklift Sys.*, Inc., 510
7    U.S. 17, 23 (1993)). "Simply causing an employee offense based on an isolated comment
8    is not sufficient to create actionable harassment under Title VII." *McGinest v. GTE Serv.*
9    *Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). Rather, a plaintiff must show that the
10   workplace was "permeated with discriminatory intimidation, ridicule, and insult" to
11   demonstrate that it was sufficiently hostile or abusive to establish an actionable harassment
12   claim. *Harris*, 510 U.S. at 21.

13         Plaintiff claims she was subjected to a hostile work environment "via [PENTAD]
14   leadership's threats to [Ms.] Claflin's career and, subsequently, her retirement benefits and
15   livelihood." (Resp. at 14.) Plaintiff contends, "these threats were in-part motivated by [Ms.]
16   Claflin's protected status as a female over the age of forty-years-old." (Resp. at 14.) To
17   support her claim Plaintiff states Dr. Taylor told Plaintiff, despite any evidence of subpar
18   performance, that Defendant was sending individuals to investigate and remove
19   Ms. Claflin. (Resp. at 15.) Further, she alleges, Mr. Costie told her allowing her to stay in
20   her position was not an option. (Resp. at 8.) Additionally, Plaintiff states she cried most
21   days upon leaving work, was experiencing weight loss, and was in a constant state of fear
22   due to her treatment at work. (Resp. at 15.)

23         Contrary to Plaintiff's assertion, there was ample evidence of subpar performance
24   at the Phoenix VA. The whistleblower's allegations led to multiple government
25   investigations and naturally members of PENTAD would be scrutinized. Further, being
26   informed that an employer has concerns about one's performance does not create a hostile
27   work environment. The Court finds a reasonable person would not find Plaintiff's situation
28   was a hostile or an abusive environment. *See e.g. Vasquez v. County of Los Angeles*, 349

F.3d 634 (9th Cir. 2003) (no racially hostile work environment claim where the supervisor made only two derogatory comments about the plaintiff in a six-month period); *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (conduct was not severe or pervasive even though plaintiff alleged her coworkers often made racially insensitive comments such as "China man," made derogatory comments regarding China and communism, made fun of the plaintiff's accent, and "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians"); *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000) (plaintiff failed to sustain a hostile work environment claim based on: (1) a supervisor calling female employees "castrating bitches," "Madonnas," or "Reginas" on multiple occasions in the plaintiff's presence; (2) the plaintiff's supervisor calling the plaintiff "Medea;" and (3) sending her postcards at home); *but see Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1163 (9th Cir. 2017) (employer's decision to support employee who allegedly raped plaintiff went beyond simple offensive comments and was sufficiently hostile to survive summary judgment). Accordingly, Summary Judgment in favor of Defendant is appropriate as to Plaintiff's claims based on hostile work environment.

## IV. CONCLUSION

The Court grants Summary Judgment to Defendant on Plaintiff's disparate treatment, ADEA, and hostile work environment claims.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 51).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 14th day of March, 2022.

Honorable John J. Tuchi
United States District Judge